IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LISA A. BARDOLE,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CV 12–116–M–DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

Plaintiff Lisa Bardole brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Bardole protectively filed her application for benefits on April 25, 2008, alleging disability since February 1, 2008, due to back and neck impairments, and depression. Tr. 209, 232. After an administrative hearing, at which Bardole appeared with counsel, an Administrative Law Judge ("ALJ")

PAGE 1

found that Bardole was not disabled. Tr. 24-35. The Appeals Council denied Bardole's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-6. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Bardole was 47 years old at the time of her alleged onset date, and 50 years old at the time of the ALJ's decision.

I. **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or

PAGE 3

more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Following the steps in the sequential evaluation process, the ALJ first found that Bardole met the insured status requirement of the Act through December 31, 2012, and had not engaged in substantial gainful activity since her alleged onset date. Tr. 26. The ALJ found at step two that Bardole had the following severe impairments: degenerative disc disease of the lumbar spine, depression, degenerative disc disease of the cervical spine, major depressive disorder, asthma and chronic pain syndrome. Tr. 26. At step three, the ALJ determined that

Bardole did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. Tr. 27. The ALJ also found that while Bardole's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms" were not entirely credible. Tr. 29. Having done so, the ALJ determined that Bardole retained the residual functional capacity to perform a limited range of light work. Tr. 28. The ALJ then found that Bardole could not return to her past relevant work as a fly-fishing product manufacturer and casino worker. Proceeding to step five, however, the ALJ concluded that Bardole was not disabled because there remained a significant number of jobs in the economy that she could perform, including sedentary work as a food cashier, and light level work as a demonstrator and order filler. Tr. 34.

### A. Other Medical Sources

Bardole first saw mental health counselor Gary Lamey in January 2008, at which time she reported symptoms of depression, confusion, insomnia, and loss of appetite. Tr. 676. Lamey concluded that Bardole likely had a major depressive disorder, recurrent, and thereafter counseled her on a fairly regular basis over the course of the next few years. Tr. 597-677. In September 2010, Lamey completed

PAGE 5

a Mental Residual Functional Capacity Questionnaire on which he assessed Bardole with major depression, post traumatic stress disorder, chronic back pain, and difficulty maintaining employment due to depression and chronic pain. Tr. 678. He indicated that Bardole would be absent from work more than four days per month and that she would be "unable to meet competitive standards" in such areas as maintaining regular attendance and completing a normal workday and workweek without interruptions. Tr. 680-82.

In March 2011, Lamey wrote a letter in support of Bardole's application for benefits. Tr. 760-61. He described Bardole's pain and depression, and wrote that there were "far too many obstacles...to recommend employment of any type as a reasonable or realistic expectation." Tr. 760-61. Bardole argues the ALJ erred by not accepting Lamey's opinions.

As a mental health counselor, Lamey does not qualify as an acceptable medical source. 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); SSR 06-3p. Only acceptable medical sources can render medical opinions. SSR 06-3p; 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Information from "other sources" like Lamey may nevertheless "provide insight into the severity of the impairment and how it affects the individual's ability to function." SSR 06-3p. The ALJ can reject other source opinions for "germane" reasons. *See e.g. Turner v. Comm'r of Social Security*,

613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ's discussion of such an opinion need only be specific enough to "allow[] a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-3p.

The ALJ considered Lamey's opinions, but gave them little weight on the ground that they were not consistent with his treatment notes. Tr. 32. For example, the ALJ pointed out that although Lamey indicated Bardole would be unable to maintain attention for two hours at a time, there was no indication in his treatment notes that she had ever complained of problems concentrating or that he had ever observed her having difficulty doing so. As the ALJ recognized, Lamey's treatment records showed that Bardole's depression typically improved on medication,[1] but would sometimes worsen in reaction to situational stressors in her life, such as marital and financial problems. Tr. 31. While Lamey's notes thus reflect that Bardole's depression waxed and waned over the years, the ALJ permissibly found that read in their entirety, those notes were not consistent with, and did not support, Lamey's subsequent opinions regarding the disabling severity Bardole's depression-related limitations.

### B. Credibility

Bardole argues the ALJ failed to cite sufficiently clear and convincing

---

[1] See e.g. Tr. 608, 618, 621, 623.

reasons for discrediting her testimony.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

PAGE 8

complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Bardole had several severe impairments that can reasonably be expected to produce some degree of symptom. Bardole has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ considered Bardole's subjective testimony, but found her less than entirely believable for a number of reasons. To begin with, the ALJ observed that Bardole's allegations of disabling pain were not supported by the medical record. Tr 29. Bardole testified that her back and neck pain was so severe that she could not leave her house for days at a time, and she spent most of her time sitting in a recliner. Tr. 76-78. As the ALJ noted, however, most of the medical findings and test results in the record were essentially normal. Tr. 29. In February 2008, for example, CT scans of Bardole's neck and back were normal. Tr. 29, 373. And an MRI of her lumbar spine in March 2008 showed disc extrusion with a small tear at L4-L5 without impingement, and disc protrusion at L5-S1 with annular tear, no spinal canal stenosis or neural impingement, and mild degenerative changes. Tr. 29, 365. The ALJ permissibly cited these and other test results in finding that the objective medical evidence simply did not support the level of pain and limitations Bardole alleged. Tr. 29. *See e.g. Lingenfelter v.*

Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (the lack of objective medical evidence is an appropriate factor for the ALJ to consider in evaluating credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also questioned Bardole's credibility because she continued to work for more than two years after her February 1, 2008, alleged onset date. Tr. 32. Bardole reported to her doctor in April 2008 that she was working as a floor runner at a casino. Tr. 584. And in July 2008, Bardole told Lamey that she had found a different job requiring less physical activity. Tr. 450. But by March 2009, she was again working as a casino floor runner. Tr. 508. In June 2009, Bardole reported working approximately 30 hours a week. Tr. 504. While the ALJ recognized that Bardole "did not earn enough for her work to be considered substantial gainful employment," he permissibly found the fact that "she did continue to work after the alleged onset date" undermined her credibility as to the extent of her pain and limitations during that period.

In February 2010, Bardole told Lamey that her hours at work had been reduced, thereby making her financial situation even more difficult. Tr. 616. To the ALJ, this called Bardole's testimony into question because it suggested she began working less simply because her employer reduced her hours, not because

PAGE 10

her impairments were so severe that she had to work fewer hours. Tr. 32. This too was a reasonable basis for questioning Bardole's testimony to the extent she claimed her pain was so severe that she rarely left the house and spent most of her time in a recliner.

Finally, the ALJ found it significant that Bardole claimed she could not afford to continue with physical therapy in November 2010,[2] but chose to spend $2,300 on elective Lasik eye surgery just two weeks later, in December 2010. Tr. 30. But the record reflects that Bardole's Laisk eye surgery actually took place two years earlier – in December 2008. Tr. 758. While this was error, the Court finds as discussed above that the ALJ otherwise provided sufficiently clear and convincing reasons for finding Bardole's subjective testimony only partially believable.

### C. Lay Testimony

Bardole next argues the ALJ erred by disregarding two written statements submitted by her ex-husband, Jon-Paul Bardole, discussing her "work ethic, history, daily pain, her limitations, inability to engage in certain activities, need to spend substantial time in bed, inability to sustain work activities or physical need

---

[2] Tr. 718.

to lie down during the day, [and] her inability to sustain activity." Doc. 20, at 7. See Tr. 326-27; 348-49.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting

PAGE 12

*Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Jon-Paul wrote that Bardole had led a very active lifestyle until July 2006, when she was in a car accident. Tr. 326. Jon-Paul explained that Bardole began to suffer from shoulder, back, and neck pain that continued to worsen over time. Tr. 326. He stated that he "witnessed her getting worse physically and emotionally" and "it became impossible for her to work more than three days a week." Tr. 326. He indicated that she had difficulty with everyday chores, and had a very hard time sleeping. Tr. 326. Jon-Paul wrote that Bardole could only stand and sit for short periods of time, and spent most of her time every day sitting or lying down. Tr. 348.

Bardole is correct that the ALJ erred by not addressing Jon-Paul's written testimony. But because his testimony was very similar to, and thus cumulative of, Bardole's own testimony, the ALJ's error was harmless. Bardole similarly testified that she was in so much pain that she spent of her days sitting down needed help with chores, could not sleep, and was not able to stand or sit for more than 20 to 30 minutes at a time. See e.g. Tr. 58-61, 68-770, 78-80. As discussed above, the ALJ provided sufficiently clear and convincing reasons for discounting Bardole's testimony. Because Jon-Paul's testimony largely reiterated Bardole's, it

was inconsequential to the ultimate disability finding and the ALJ's failure to specifically consider it was harmless.  *See See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (ALJ's failure to consider lay witness testimony was harmless where that testimony "did not describe any limitations beyond those" described by the claimant, "which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons.")*; Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's testimony).

Bardole next contends that the ALJ erred by failing to consider "several letters of recommendation and newspaper articles that demonstrate her long-standing work history and dedicated work ethic, as well as her active life prior to the terrible crash with the moose in July 2006, and her serious decline and ultimate inability to sustain work activity." Doc. 20, at 8.  Tr. 291-93, 306-25, 326-27.  But Bardole does not cite any authority for the proposition that the ALJ was somehow required to consider old newspaper articles and letters reflecting that she lived an active and productive life before her alleged onset date.

### D. Vocational Expert

Finally, Bardole argues the ALJ's hypothetical to the vocational expet was flawed because it did not incorporate the limitations to which she and Jon-Paul testified, or the limitations identified by Lamey. But because the ALJ properly discredited Bardole's testimony and rejected Lamey's opinions, he was not required to include those limitations. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). Substantial evidence of record supports the ALJ's assessment of Bardole's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert.

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that the Bardole's motion for summary judgment be DENIED, the Commissioner's motion for summary judgment be GRANTED, and the Commissioner's decision be affirmed.

DATED this 25th day of September, 2013

Jeremiah C. Lynch
United States Magistrate Judge